UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| LACY J. MONDAY,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY<br><br>    Defendants. | Case No. 4:23-CV-96 JD |

**OPINION AND ORDER**

Plaintiff Lacy Monday appeals the denial of her claims for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

**A. Background**

Ms. Monday applied to the Social Security Administration for disability benefits, alleging that she became disabled in December 2016. Ms. Monday's claims were rejected, leading to a review by an Administrative Law Judge ("ALJ"). In March 2021, the ALJ issued a decision finding Ms. Monday not disabled. (R. at 15–27.) After the Appeals Council denied Ms. Monday's request for review (R. at 1–5), she filed a complaint with the United States District Court for the Southern District of Indiana (R. at 1313–14). The Commissioner then jointly moved to reverse and remand for further proceedings under sentence four of 42 U.S.C. § 405(g). The court granted the motion. (R. at 1317.) In turn, the Appeals Council remanded the case to the ALJ finding that further evaluation of the prior administrative medical findings ("PAMF") was warranted:

> Specifically, the PAMF found that the claimant's mental impairments caused moderate limitations, including that the claimant can relate on a superficial and ongoing basis with co-workers and supervisors. Although the Administrative Law Judge evaluated the PAMF regarding the claimant's physical impairments and limitations, the Administrative Law Judge did not evaluate the PAMF regarding the claimant's mental impairments and limitations. Significantly, the PAMF noted above appears more restrictive than the Administrative Law Judge's residual functional capacity finding that indicates the claimant "can have occasional brief interactions with the general public, co-workers, and supervisors with no more than occasional routine workplace changes." However, the ALJ also found "she can tolerate normal supervisory interactions as needed."

(R. at 1323 (citations omitted).)

In the proceedings before a second ALJ, Ms. Monday maintained that from August 2018 to July 2022, she experienced heightened anxiety and depression, frequent crying spells, irritability, and mood changes. She was treated by a therapist and a psychiatrist, who noted symptoms like anxious and dysphoric mood, helplessness, and visual hallucinations. Despite medication adjustments, including Wellbutrin, Remeron, and Abilify, symptoms persisted, including social isolation and thoughts of self-harm. By 2020, she reported aggression and passive suicidal ideation. In 2022, Dr. Erica Swanson observed cognitive difficulties and opined that Ms. Monday would be unable to manage her own funds if awarded benefits. Among other things, both State Agency psychologists who considered Ms. Monday's claims for disability found that she "can relate on a superficial and ongoing basis with co-workers and supervisors." (R. at 84, 115.)

At the hearing, Ms. Monday testified that her psychiatric medications "make [her] like a zombie sometimes. I — I don't know how to explain it. I just feel icky." (R. at 1258.) She described herself being easily angered and snapping at people. (*Id*.)

Psychological Expert Dr. Nicole Martinez also testified. In her opinion, Ms. Monday had medical impairments including depression and anxiety; she also suspected that Ms. Monday

2

suffered from personality disorder. (R. at 1269) Dr. Martinez assessed moderate limitations in interacting with others; understanding, remembering and applying information; and concentrating, persisting, or maintaining pace. (R. at 1270.) She opined that Ms. Monday should have occasional interaction with the public, coworkers, and supervisors; be limited to simple, routine repetitive tasks; end-of-day work quotas with no production pace; and occasional changes to the physical work environment. (R. at 1270–1271.)

The ALJ questioned the vocational expert ("VE") to assess whether there are a significant number of jobs in the national economy for a hypothetical individual with the same functional limitations as Ms. Monday.

The ALJ issued a decision finding that Ms. Monday was not disabled. (R. at 1228.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Ms. Monday suffered from the following severe impairments: "fibromyalgia, diabetes mellitus type II, polyneuropathy, carpal tunnel syndrome, right-hand trigger finger, obesity, major depressive disorder, anxiety, thoracic and lumbar degenerative disc disease, hearing impairment, and chronic kidney disease." (R. at 20.)

As relevant here, at Step 3, the ALJ found that Ms. Monday's impairments, alone or combined with each other, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1219.)

At Step 4, the ALJ determined Ms. Monday's residual functional capacity ("RFC"),[1] finding that she can

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

>perform sedentary work[2] . . . except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She should avoid workplace hazards such as unprotected heights and dangerous moving mechanical machinery. She should not perform above head work with the right upper extremity above five pounds. She should avoid working in conditions of extreme heat and/or cold or humidity and/or wetness. She should avoid walking on uneven surfaces. She can occasionally operate foot controls, such as pedals, with the bilateral lower extremities. She can frequently handle and finger with the bilateral upper extremities. She should not work in loud environments, with loud as defined in the D.O.T. She is limited to simple tasks in a routine work setting, but not at a production rate pace, for example, no assembly line work. She is limited to occasional changes in the workplace that are well explained. She is limited to occasional superficial interaction with supervisors, coworkers, and the general public. Superficial is defined as that which is no more than occasional, brief interactions relating to things such as exchange of greetings, pleasantries, and responses to questions relating to work duties. There should be no tandem work as an essential function of the job.

(R. at 1221.)

In light of this RFC, the ALJ determined that Ms. Monday cannot perform any past relevant work. (R. at 1227.) At the final step, the ALJ found that, considering Ms. Monday's age, education, work experience, and the RFC, there are jobs in significant numbers in the national economy that she can perform (final assembler, table worker, document preparer). (R. at 1228.) The ALJ arrived at this conclusion after questioning the VE at the hearing.

Ms. Monday did not seek review of the ALJ's decision by the Appeals Council, and the Appeals Council did not otherwise assume jurisdiction. Thus, the ALJ's decision is the final decision of the Commissioner, reviewable by this Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.984 (setting out procedures for cases on review under remand).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

4

**B.     Standard of Review**

Because the Appeals Council did not assume jurisdiction after the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *See* 20 C.F.R. § 404.984(d) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge or administrative appeals judge becomes the final decision of the Commissioner after remand."); *see also Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before

affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed

6

disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D. Discussion**

**(1)** *Mental Residual Functional Capacity Assessment*

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). When assessing mental RFC, state agency psychological consultants consider "claimants impairments in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *See Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). As part of the assessment, they use "a form called Mental Residual Functional Capacity Assessment, which has two relevant components: (1) a checkbox-type worksheet for the

7

psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Timothy O. v. Kijakazi*, 2023 U.S. Dist. LEXIS 243488, *6 (S.D. Ind. April 21, 2023) (citing Program Operations Manual System DI 25020.0010(B)(1) and *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). "ALJs must consider—but are not required to adopt—the findings of state-agency psychologists." *Id*. (citing 20 C.F.R. § 404.1513). When evaluating these opinions, "[t]he ALJ must consider whether the consultants' narrative RFC assessment 'adequately encapsulates and translates' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). In addition, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga*, 794 F.3d at 813. "If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the VE." *Nichol L. A. v. Comm'r of Soc. Sec.*, No. 21-CV-480, 2022 WL 3348774, at *14 (S.D. Ill. Aug. 12, 2022) (*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). It's not enough for the ALJ to rely on the narrative RFC recommendations, unless the narrative accounts for all the limitations that an expert has identified "including specific questions raised in check-box of standardized forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *see also Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("It is well-established that 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.' However, an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination.") (citations omitted)).

8

Initially and upon review, the two State Agency psychologists reached identical conclusions in Ms. Monday's Mental Residual Functional Capacity Assessment. As relevant to this appeal, they found in the check-box portion of the form that Ms. Monday "sustained concentration and persistence limitations" (R. at 83, 114), rating her as moderately limited in her ability to—

- "maintain attention and concentration for extended periods;" and
- "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."

(R. at 83–84, 114–15.) They found that she was not significantly limited in other areas, namely the ability to—

- carry out very short and simple, or even detailed, instructions;
- stay on schedule, maintaining regular attendance, and being punctual within customary tolerances;
- sustain an ordinary routine without special supervision;
- work in coordination with or in proximity to others without being distracted by them; and
- make simple work-related decisions.

(R. at 83, 114.)

In the narrative portion of the assessment, the two experts explained Ms. Monday's "sustained and persistence capacities and / or limitations":

> The evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. . . . The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(R. at 84, 115.)

At the hearing, psychological expert, Dr. Nicole Martinez, testified about Ms. Monday's mental functioning limitations. She opined that Ms. Monday was moderately limited in her ability to understand, remember, or apply information.[3] (R. at 1269.) Like the State Agency psychological consultants, she opined that Ms. Monday had moderate limitations in concentration, persistence, and ability to maintain pace. (R. at 1270.) According to Dr. Martinez, based on her limitations, Ms. Monday "would be capable of self-pace, end of day daily work quotas. But a production pace would not be ideal. She should stick to simple, routine, repetitive tasks. And then finally, occasional changes to the physical work environment." (*Id*.)

In her RFC discussion, the ALJ repeated verbatim the State Agency psychologists' narrative finding their opinions persuasive.[4] (R. at 1225.) The ALJ added that "the evidence as a whole, including the psychological medical expert's persuasive testimony, established that the claimant could perform simple tasks in a relatively static environment. Indeed, her largely normal cognitive functioning, logical thoughts, and appropriate behavior were consistent with such conclusion." (*Id*.) Similarly, the ALJ found Dr. Martinez's hearing testimony persuasive insofar as, having "reviewed the entire record," Dr. Martinez believed that Ms. Monday "could perform simple, routine, repetitive tasks with occasional changes to the physical work environment." (R. at 1226.) The ALJ found this opinion generally consistent with the evidence in the record. (*Id*.)

In her RFC finding (and the corresponding hypothetical question to the VE), the ALJ posited that Ms. Monday "is limited to simple tasks in a routine work setting, but not at a

---

[3] Dr. Martinez's opinion in this sense is more restrictive than the opinions of the State Agency psychological consultants.

[4] The ALJ questioned the psychologists' finding about Ms. Monday's ability to interact with others only on a superficial basis, but adopted outright their finding about the concentration, persistence, and pace.

production rate pace, for example no assembly line work. She is limited to occasional changes in the workplace that are well explained." (R. at 1221, 1275–76.) Based on those limitations and as testified by the VE, the ALJ found that there were a significant number of jobs in the national economy that Ms. Monday was still able to do. The ALJ included no off-task limitations in the RFC.

On appeal, Ms. Monday claims that the ALJ ignored "checkbox" limitations related to her concentration and need for breaks, which were identified by the Stage Agency reviewing psychologists, and disregarded "moderate" limitations in concentration, persistence, and pace in the residual functional capacity and hypothetical questions to the vocational expert. In other words, Ms. Monday argues that the ALJ did not account for all her limitations in the RFC. The court agrees.

In her opinion, the ALJ did not address the state agency psychologists' checkbox ratings regarding Ms. Monday's moderate limitations in concentration, persistence, and pace. Instead, the ALJ adopted their narrative opinions, finding them to be generally persuasive. But the narratives failed to encapsulate and translate the moderate checkbox findings, and the ALJ did not explain why she omitted those findings, thus producing an RFC that failed to incorporate all of Ms. Monday's limitations supported by the medical record. In particular, in the checkbox ratings, the psychiatrists found that Ms. Monday had moderate limitations in (1) maintaining attention and concentration for extended periods, and (2) completing a normal workday and workweek without interruptions, as well as (3) performing at a consistent pace without an unreasonable number and length of rest periods. (R. at 83–84, 114–15.) Yet the narratives are limited to the areas in which Ms. Monday has no limitations (understanding, remembering, and carrying out detailed, but not complex tasks) or present Ms. Monday's mental functioning

abilities without reference to her ability to concentrate for extended periods, or complete a normal workday or workweek, or perform at a consistent pace over a period of time ("[t]he claimant can attend to tasks for a sufficient period to complete tasks"; "[t]he claimant can manage the stresses involved with detailed work-related tasks"). While the narrative states that Ms. Monday "can attend to *tasks* for a *sufficient period* to complete tasks" (R. at 84, 115), there's no indication what kind of tasks are being considered and what is a "sufficient period" for their completion. But even assuming that the psychologists were considering work-related tasks, the temporal vagueness in the narrative remains problematic in view of their checkbox assessment that Ms. Monday has a moderate limitation in completing a normal *workday* and *workweek* without interruptions, as well as performing at a consistent pace without an unreasonable number and length of rest periods. The VE testified that there would be no jobs for a person with Ms. Monday's RFC if that person would be off-task more than 20% of the time. (R. at 1277.) In fact, in response to Ms. Monday's question from her counsel, the VE clarified that employers generally tolerate no more than 10% of off-task activity. So the checkbox limitations in question are highly relevant but they're not "translated" or "encapsulated" into the narrative upon which the ALJ relied. Without more, the Court cannot assume that "sufficient period" includes a moderate limitation of completing a normal workday or workweek, or performing without unreasonable interruptions. *See Donald G. v. Kijakazi*, No. 3:21-CV-164, 2023 WL 2957448, at *9 (S.D. Ind. Feb. 16, 2023), report and recommendation adopted, No. 3:21-CV-164, 2023 WL 2643238 (S.D. Ind. Mar. 27, 2023) ("The narratives do not explicitly state that [the plaintiff] could sustain concentration normally within a workday or workweek, unlike many of the cases cited by the Commissioner.").

In *Donald G. v. Kijakazi*, No. 3:21-CV-164, 2023 U.S. Dist. LEXIS 52754, at *23 (S.D. Ind. Feb. 16, 2023), the court found the same narrative RFC to be inconsistent with the checkbox limitations, which resulted in a remand because "the ALJ offered no discussion of whether he found the reviewing psychologists' narrative opinions to encapsulate the . . . 'checkbox' limitations, *id*. See also Timothy O.*, 2023 U.S. Dist. LEXIS 243488 (same ruling in a factually similar case). The court likened the ALJ's omission more significant than in *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019), where the Court of Appeals for the Seventh Circuit remanded the case "because the ALJ did not adequately account for the limitations identified by the doctor in the check-box section of the forms."

The ALJ's omission is not cured by her ultimate finding in the RFC that Ms. Monday "is limited to simple tasks in a routine work setting, but not at production rate pace, for example, no assembly line work." (R. at 1221.) The Commissioner points to *Pavlicek v. Saul*, 994 F.3d 777, 780 (7th Cir. 2021), and argues that a moderate limitation in concentration, persistence, and pace is consistent with the RFC providing for simple tasks in a routine work setting. But *Pavlicek* is distinguishable. There, the consultants "found that [plaintiff] could still remember basic information and simple instructions, could pay attention for up to two hours at a time, and could perform at a consistent pace 'particularly if [ ] engaged in [ ] simple, repetitive tasks.'" *Pavlicek Id*. at 780. In turn, the ALJ found, as relevant to the current discussion, that plaintiff was "limited to understanding, remembering and carrying out simple instructions and routine, repetitive tasks; that he only make simple work-related decisions in an environment without fast-paced production requirements and with few or no changes in work duties." The Court of Appeals found the ALJ's reliance on the narrative in fashioning the RFC reasonable because the narrative was consistent with the checklist ratings. *Id*. at 783. The court noted that "[a] 'moderate

13

limitation' is defined by regulations to mean that functioning in that area is 'fair' . . . [s]o a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* But unlike in *Pavlicek*, missing in this case is any mention from the state agency consultants and Dr. Martinez about the specific duration of Ms. Monday's ability to maintain attention and concentration. As noted above, the state agency psychologists' refer in their narrative RFC to Ms. Monday's ability to "attend to tasks for a sufficient period." Yet the meaning of this term is imprecise, given their own findings that Ms. Monday was limited in maintaining attention and concentration for extended periods and completing a normal workday and workweek. Moreover, Dr. Martinez's opinion that Ms. Monday can complete simple tasks is a conclusion which—if it is going to be adopted by the ALJ—must be reconciled or differentiated from the state agency psychologists' checkbox findings regarding moderate limitations. The Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga*, 794 F.3d at 814 (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); *see also Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("We have also made clear that in most cases 'employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). This is so because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

While in *Pavlicek* the consultants clearly articulated that the plaintiff could maintain concentration for *two-hour periods*, at a consistent pace, over the course of an eight-hour workday, no such findings (not anything equivalent to them) were made here. As a result, the logical bridge from the evidence to the conclusion is missing. *See Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *4 (N.D. Ind. June 5, 2024) (distinguishing *Pavlicek* where the state agency psychologists did not incorporate in the narrative RFC the limitation that the claimant could maintain focus for two-hour periods and provided no comparable analysis of plaintiff's ability to concentrate); *Timothy O.*, 2023 U.S. Dist. LEXIS 243488, at *13–14 (same).

For all these reasons, the Court finds that remand is needed. "On remand, the ALJ should consider whether the checkbox limitations are consistent with the state agency consultants' narratives and if inconsistent, either include the limitations in the RFC and hypotheticals or explain the reasoning for excluding the checkbox limitations." *Donald G.*, 2023 U.S. Dist. LEXIS 52754, at *28.

**(2)** *Ms. Monday's other Argument*

Ms. Monday also claims that there is another error in the ALJ's RFC determination. She argues that by defining "superficial" in the RFC to include "responses to questions relating to work duties," the ALJ effectively rejected the state agency consultants' narrative RFC without an explanation. The Court elects to forgo addressing this argument because the ALJ's failure to properly consider the opinions of the State Agency psychologists requires a remand. *Cf. DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). The Court's decision in this regard says nothing about the strength of Ms. Monday's remaining argument, and she is free to re-assert it on remand.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: March 20, 2025

                                              /s/ JON E. DEGUILIO  
                                              Judge  
                                              United States District Court